# EXHIBIT A

JEFF FINE
Clerk of the Superior Court
By Bianca Barrett, Deputy
Date 04/14/2020 Time 10:25:10
Description                    Amount
-------- CASE# CV2020-004633 --------
CIVIL NEW COMPLAINT            333.00 D
TOTAL AMOUNT                     0.00
Receipt# 27743713

**SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| CARL A. WESCOTT,<br><br>               Plaintiff,<br>vs.<br><br>AUGMENTED KNOWLEDGE;<br>DR. KEVIN GEUN SIK JO;<br>INHA UNIVERSITY;<br>BERNARD MOON;<br>THE SPARKLABS GROUP;<br><br><br><br>               Defendants.<br><br>+ DOES 1 through 100 | Civil Action No. **CV 2020-004633**<br><br>**COMPLAINT FOR UNPAID EMPLOYEE EXPENSES, BREACH OF THE COVENANT OF GOOD FAITH & FAIR DEALING, PROMISSORY FRAUD PROMISSORY ESTOPPEL & NEGLIGENT MISREPRESENTATION** |

Plaintiff Carl A. Wescott, proceeding *pro se,* complains of Defendants Augmented Knowledge, Dr. "Kevin" Geun Sik Jo, Inha University, Mr. Bernard Moon, and the SparkLabs Group.

**1. The Parties: Plaintiff and Defendants**

1. The Plaintiff is an individual residing in Scottsdale, AZ.

2. Bernard Moon is an individual residing in Palo Alto, CA but doing significant business in Maricopa County, Arizona (including with ASU). Mr. Moon is one of the three original co-founders of the SparkLabs Group and its entities, and is also a SparkLabs Group partner.

1

3. The SparkLabs Group, per its website at http://www.sparklabsgroup.com/, comprises of SparkLabs accelerator network, Asia's premier startup accelerators; Sparklabs Global Ventures, a leading seed stage fund; SparkLabs Ventures, a localtized early-stage fund (Series A & B) in South Korea; SparkLabs Capital, a late stage investment vehicle. SparkLabs accelerator network consists of SparkLabs Korea (Seoul); SparkLabs China (Beijing and launching Shanhai, Chengdu, and Shenzhen), SparkLabs IoT & Smart Cities (Songdo, South Korea), SparkLabs Taipei and SparkLabs FinTech (Hong Kong)."

4. SparkLabs partners and the The SparkLabs Group do significant business in Arizona, operating SparkLabs Frontier-ASU http://www.sparklabsfrontierasu.com/ in partnership with Arizona State University. As part of that, the SparkLabs Group will be running cohorts in Arizona and investing money in Arizona companies founded by Arizona State University students.

5. As the SparkLabs Frontier-ASU web site states, « SparkLabs Frontier-ASU is a new startup accelerator program launched by SparkLabs Group, the global network of accelerators and venture funds."

6. Inha University is the university where Dr. Jo is a professor. The Inha University AI Lab spun out Augmented Knowledge. Upon information and belief, Inha University is an equity holder in Augmented Knowledge. The University was the host, venue, and apparently payee for the promised payments and expense reimbursements for the Plaintiff's trip to Seoul, South Korea in late June and early July 2019.

## 2. Further allegations regarding DOES and conspiracy between defendants

7. In addition, upon information and belief, there are even more individual Defendants currently unknown to Plaintiff, who shall emerge with the benefit of legal discovery.

8. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, Dr. Kevin GS Jo and Mr. Bernard Moon, as individuals, in addition to acting for himself and on his and her own behalf individually, as well as for the benefit of their respective marital community (if any per individual case), are and were acting as the agents, servants, employees, and/or representatives of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the Defendants (individual and entities) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy. Plaintiff further alleges on information and belief that the acts of each of the Defendants were fully ratified by each and all the Defendants. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of the specific Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants (individual and corporate).

9. In addition, upon information and belief, there are even more corporate, trust, and other entity type Defendants currently unknown to Plaintiff, which shall emerge with the benefit of legal discovery.

10. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, Augmented Knowledge, Inha University, the SparkLabs Group, in addition

3

to acting for itself and for its own behalf, was acting as the agent, servant, and/or representative of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the Defendants (entity and individual) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy. Plaintiff further alleges on information and belief that the acts of each of the Defendants were fully ratified by each and all of the Defendants. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of the specific Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants (individual and corporate).

11. There are dozens of other SparkLabs Group entities, partners, and portfolio companies that, upon information and belief, have liability to the Plaintiff, his entities, and/or related parties. The Plaintiff believes that those dozens of sets of issues comprise different causes of action against different sets of Defendants in many different jurisdictions and venues. The Plaintiff is beginning to address some of these issues in parallel at this point. A summary of the sets of issues is provided in Exhibit A and is based on the Plaintiff's current knowledge and beliefs.

12. The Plaintiff has separate potential claims against Dr. Jo and/or Augmented Knowledge, related to US $70,000+ worth of equity awarded to the Plaintiff and/or his entity, and also related to lack of response to a request for information. That request

under CCA 1601 and the KCA Section 446 (2) is included in Exhibit B. Those claims are not encapsulated in this legal complaint.

13. The Plaintiff was cut off from his access to Augmented Knowledge servers, his email, and his and Augmented Knowledge documents on or around June 23rd, 2019.

## 3. Jurisdiction and Venue

14. Jurisdiction is appropriate in this Court as The SparkLabs Group, and its subsidiary SparkLabs Frontier-ASU do business in Arizona, as do others defendants in this legal complaint. Mr. Bernard Moon, for example, regularly does business in Maricopa County.

15. Upon information and belief, Dr. Jo and Augmented Knowledge conduct business in this state and County, too.

## 4. Underlying Facts

16. Plaintiff was a former employee of the SparkLabs Group. The Plaintiff is owed monies in many categories (including salary and benefits, as well as other compensation, equity, and partnership interests) by the SparkLabs Group, its partners, and some of its entities, portfolio companies, and service providers.

17. Later, the Plaintiff was an employee (or should have been, as an officer of Augmented Knowledge) of Augmented Knowledge, after a period of time in which the Plaintiff was a contractor to Augmented Knowledge (or should have been).

18. The SparkLabs Group, the Plaintiff's former employer, had initially requested the Plaintiff to assist Dr. Jo and Augmented Knowledge from December 2017 through the Plaintiff's abrupt wrongful termination in June 2019. The Augmented Knowledge duties were not too onerous through April 2018.

19. From late 2017 through April 2018 (and through June 2019), the Plaintiff believes the SparkLabs Group will still pay his missing salary, even though Mr. Bernard Moon was willing to commit felonies such as perjury, forgery, and falsifying court evidence in an attempt to cover up the fact that the Sparklabs Group owes the Plaintiff a salary.

20. Beginning in May 2018, the Plaintiff began to play a significant role in helping Augmented Knowledge with marketing and sales. For example, the Plaintiff booked and/or went to conferences and meetings with and/or on behalf of Augmented Knowledge, in California (Santa Clara, San Francisco, Oakland, and Emeryville), in Singapore, in London, in Dubai, and in Miami, Florida.

21. The Plaintiff is owed expenses from some of the trips and meetings.

22. Augmented Knowledge's software was priced at hundreds of thousands of dollars to potentially millions, and helped engineers perform MRO (maintenance and repair operations) on airplanes and their engines and other major functioning parts.

23. While the Plaintiff believes that the software should have been priced lower, especially with beta customers, the fact remains that the Augmented Knowledge software (IAR-MAP, or Intelligent Augmented Reality Maintenance Platform) was a complicated sale.

24. During that time period, per feedback from Dr. Jo and others, the Plaintiff brought more quality leads for sales than the rest of the team combined.

25. For example, the Plaintiff brought to Augmented Knowledge as potential customers SpiceJet, a Boeing subsidiary, Boeing, Qatar Airways, Etihad, and maintenance customers in Europe, Asia, and the Middle East.

26. The company gave the Plaintiff various titles, including Director and Sales Director.

27. The company made business cards for the Plaintiff.

28. The Plaintiff, as per the request of Dr. Jo, represented to other people that he was part of the Augmented Knowledge company, as he was.

29. The Plaintiff engaged various distributors for Augmented Knowledge and signed up one such distributor.

30. The Plaintiff and the distributor worked the AWE (Augmented World Expo) booth and conference without yet being compensated. The Plaintiff worked many more such conference and events.

31. Mr. Moon and Dr. Jo and a third person all requested that the Plaintiff help Augmented Knowledge hire a CEO for the US subsidiary (or possibly for the entire Augmented Knowledge company, but based in the United States, the world's largest market.

32. The Plaintiff wrote up a job description and along with Dr. Jo, conducted outreach and discussions with various headhunters, including Max Shapiro, PeopleConnect, Ken Downey, and CareerMaker.

33. The company wished to have a CEO in the San Francisco Bay Area, where it planned to base its US operations.

34. The Plaintiff and Dr. Jo had discussions with headhunters and evaluated candidates.

35. The allocated budget for the CEO, assuming very significant double-digit equity (perhaps 20% of the company), was between US $20,000 to US $30,000 per month base salary (and would, of course, be significantly higher for a candidate without much equity and/or a consulting/contractor role, or contract-to-hire.

36. The Plaintiff developed a speedscaling program for Augmented Knowledge.

37. In early April 2019, Mr. Moon, an investor in Augmented Knowledge, offered the Plaintiff the role of CEO of Augmented Knowledge, or possibly interim CEO.

38. The Plaintiff was essentially working fulltime for Augmented Knowledge in April and May 2019 (on top of another full-time job that he had), including very successful sales and marketing outreach, and with conference attendances for Santa Clara and Miami, with London, Dubai, and Singapore (again) on the horizon.

39. Even though the idea for the CEO was to hire a CEO with a marketing and sales background who could sell, Dr. Jo suggested that the Plaintiff's title be switched to CMO (Chief Marketing Officer).

40. For April and May 2019 (and continuing on through July 5th, 2019), the Plaintiff was CEO, interim CEO, and/or CMO (Chief Marketing Officer) of Augmented Knowledge.

41. Dr. Jo offered to pay the Plaintiff US $800 and some of his trip expenses to come to Seoul, South Korea (and the Plaintiff accepted). The Plaintiff purchased a airline ticket to come to Seoul for 10 days to make that speech and work daily with Dr. Jo (after a one-day event he also planned to attend).

8

42. The Plaintiff had been promised hotel room at the COEX Intercontinental in Seoul.

43. Dr. Jo also offered him two more nights' coverage and to pay some other expenses.

44. The Plaintiff's expenses were not being reimbursed, nor was he getting paid, which was putting additional financial pressure on the Plaintiff.

45. Before the mid-May Miami, Florida trip, the Plaintiff was promised a $1000 advance to cover some expenses including incidental expenses for the trip. The Plaintiff did not receive the promised amount.

46. The Plaintiff gave notice quitting his Augmented Knowledge position in mid-May 2019, but planned to fulfill his duties through July 5th, 2020, including his talk in Seoul for Inha University and promoting Augmented Knowledge, as well as the work time with Dr. Jo to further plan (and transition) marking and sales.

47. Upon information and belief, Mr. Jo called Mr. Jo as part of Mr. Jo's attempt to "blackball" the Plaintiff in the industry, and asked him to cancel the Plaintiff's talk and work.

48. The Plaintiff flew to Seoul, South Korea, despite being in significant pain from a foot injury. However, his COEX hotel pre-paid hotel reservations that had been promised were cancelled.

49. Dr. Jo also cancelled Plaintiff's paid speech at Inha University at short notice.

50. The Plaintiff ended up being in Seoul for 10 days (as per his purchased ticket), and paid hotels, meals, and other expenses. The Plaintiff has not received compensation and many of his expenses remain unreimbursed.

51. Bernard Moon, on behalf of the SparkLabs Group, had promised that the SparkLabs Group would reimburse or pay for some of these expenses. Dr. Jo, Augmented Knowledge, and/or Inha University also made offers and promises to pay the Plaintiff and/or his expenses for business travel on their behalf.

52. The most recent promise was in June 2019.

53. The Plaiutiff should be paid for his part-time work for Augmented Knowledge from May 2018 through March 2019.

54. The Plaiutiff should be paid for his fulltime work for Augmented Knowledge from April 2019 through July 5th,, 2019.

55. The Plaiutiff should be paid the US $800 for his speech that was cancelled with short notice. The Plaintiff traveled to Incheon, South Korea to do that talk, and was there for over 10 days.

56. The Plaintiff's unreimbursed business expenses should be paid by Defendants.

57. The travel expenses and related expenses ("The Expenses"), are over US $10,000.

58. The Plaintiff no longer works for Augmented Knowledge.

59. Despite all the previous promises, Dr. Jo stopped taking the Plaintiff's calls or responding to his emails.

60. To right the scales of justice, the Plaintiff is forced to take this step to get a jury trial proving he is owed these sums. In the trial he will prove the consequential damages stemming from these unpaid contracting wages, officer salary or equivalent, and reimbursable expenses.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Count I – Unpaid Employee Expenses**

61. The Plaintiff realleges paragraphs 1-60 as if fully set out herein.

62. Arizona lacks statutory laws that give further precision to this particular issue.  The

Plaintiff requests that this Court apply California law, as Bernard Moon, and multiple

SparkLabs entities, including at least one that the Plaintiff worked for, are domiciled in

California.  Further, Dr. Jo and Augmented Knowledge do significant business in

California, including annual participation at the Augmented World Expo at the Santa

Clara Convention Center.

63. California Labor Code 2802 (a) reads as follows:

> An employer shall indemnify his or her employee for **all necessary**
> **expenditures** or losses incurred by the employee in direct consequence of the
> discharge of his or her duties, or of his or her obedience to the directions of the
> employer, even though unlawful, unless the employee, at the time of obeying
> the directions, believed them to be unlawful. (Emphasis added).

64. The Expenses were necessary to the discharge of the Plaintiff's employment and were

reasonable and were not only not objected to by Mr. Moon or Dr. Jo during the

original conversations where the agreement to pay these expenses emanated… Mr. Jo

and Dr. Jo made the offers and suggestions, on behalf of various entities, as accepted

by the Plaintiff.

65. The Defendants have failed to pay the Expenses despite repeated demands from the

Plaintiff.

66. As a direct result of the Defendants' refusal to pay the Expenses, Augmented

Knowledge has violated Labor Code 2802(a) and is liable for the Expenses, penalties

and interest as set out in 1194.2 and for all reasonable attorney's fees and other costs necessary to collect these amounts, pursuant to 2802 (c).

## Count II - Breach of the Covenant of Good Faith & Fair Dealing

67. The Plaintiff reallages paragraphs 1-60 as if fully set out herein.

68. The Plaintiff and Dr. Jo, on behalf of Augmented Knowledge, and in some cases on behalf of Inha University, entered into a contractual relationship, including the specific contracts initially formed orally and confirmed many times.

69. Augmented Knowledge and Dr. Jo, by failing and refusing to reimburse the Expenses that were directly necessary to the Plaintiff\s discharge of his employment duties, prevented the Plaintiff from receiving benefits the Plaintiff reasonably expected to receive.

70. Augmented Knowledge's failure represented an act of bad faith and a refusal to act fairly.

71. The Plaintiff has been damaged by Augmented Knowledge's breach of the covenant of good faith and fair dealing by losing the Expenses incurred and in and suffering consequential damages within the contemplation of the parties including business opportunity costs and personal tolls and sacrifices.

### Count III – Promissory Fraud

72. The Plaintiff realleges paragraphs 1-60 as if fully set out herein.

73. Dr. Jo's assurances that the Expenses would be promptly approved and paid ("Jo's Assurances") were knowingly false when made in April 2017, May 2017, and beyond (at each occurrence)

74. Jo's Assurances were made as part of a scheme to induce the Plaintiff to continue to perform professional services for the benefit of the Augmented Knowledge without payment of the Expenses, nor of consulting fees and wages, as apropos.

75. Dr. Jo, acting as agent and CEO for Augmented Knowledge, intended that the Plaintiff rely on Jo's Assurances.

76. The Plaintiff in fact reasonably relied on Jo's Assurances to his detriment.

77. The Plaintiff has been damaged by Defendants' acts of promissory fraud by losing the Expenses incurred and fees and wages and suffering consequential damages within the contemplation of the parties including business opportunity costs and personal tolls and sacrifices.

### Count IV – Promissory Estoppel

78. The Plaintiff realleges paragraphs 1-60 as if fully set out herein.

79. In making Jo's Assurances, Jo knew or should have known that Jo's Assurances would induce reliance on the part of the Plaintiff, including both action and forbearance.

80. The Representations did in fact induce action and forbearance on the part of the Plaintiff in that the Plaintiff provided professional services to the Augmented Knowledge and many of its entities and deferred the collection of the Expenses.

81. The interests of justice require that Augmented Knowledge, Dr. Jo, and Inha University compensate the Plaintiff for the detriment caused by his reliance and that Defendants be estopped from contending that Jo's Assurances are not enforceable.

82. The Plaintiff has suffered detriment as the result of his reliance on the Representations, by losing the value of the Expenses incurred and in not yet being paid wages, salary, and/or consulting fees, and suffering consequential damages within the contemplation of the parties including business opportunity costs and personal tolls and sacrifices.

## Count V – Negligent Misrepresentation

83. The Plaintiff realleges paragraphs 1-60 as if fully set out herein.

84. Pleading in the alternative, at the time Jo offered Jo's Assurances he knew or should have known that the Expenses would not be approved or paid.

85. Jo had no reasonable grounds for believing that the Expenses would be approved or paid at the time he made Jo's Assurances.

86. Jo intended that the Plaintiff rely on Jo's Assurances.

87. The Plaintiff did in fact reasonably rely on Jo's Assurances.

88. The Plaintiff has been harmed as a result of his reliance on Jo's Assurances by losing the Expenses incurred and in and suffering consequential damages within the

contemplation of the parties including business opportunity costs and personal tolls and sacrifices.

WHEREFORE, PLAINTIFF PRAYS:

a. As to Count I for payment of the Expenses, plus a penalty of $100 for the first pay period in which the Expenses were not timely paid (the bi-weekly period ending May 15th, 2018) and $250 for each subsequent pay period for which the Expenses were not paid; plus interest at 10 percent per annum under CCP 685.010; plus the reasonable costs including attorney's and paralegal's fees, court costs, and costs of service incurred herein;

b. As to Count II for all direct and consequential damages flowing from the SparkLabs Group's Breach of the Covenant of Good Faith and Fair Dealing including business opportunity costs, the Plaintiff's personal suffering, including of exemplary damages in an amount sufficient to punish and deter Jo and the Defendants from Breaching the Covenant of Good Faith and Fair Dealing in the future;

c. As to Count III for all direct and consequential damages flowing from Mr. Jo's and the Defendants' acts of Promissory Fraud business opportunity costs, the Plaintiff's personal suffering and including exemplary damages in an amount sufficient to punish and deter Jo and the other Defendants from committing acts of Promissory Fraud in the future;

d. As to Count IV for all direct and consequential damages flowing from Jo's and the other Defendants' acts in inducing detrimental reliance including business opportunity costs

and the suffering from the Plaintiff's involuntary sacrifices.

e.  As to Count V for all direct and consequential damages flowing from Jo's and the Augmented Knowledge's negligent misrepresentations;

f.  For costs and reasonable fees and;

g.  For such other and further relief as this Court deems just

RESPECTFULLY SUBMITTED

Carl A. Wescott, *pro se*
Scottsdale, AZ
Monday April 13th, 2020

## *EXHIBIT A*

| | |
|---|---|
| mentoring | SS I, SS II, Taiwan |
| helping each portfolio company | Oman |
| recruiting name mentors | SS I, SS II, Cultiv8, DC, HK, Oman |
| recruiting GPs | Rob Das |
| recruiting GPs | Brian Behlendorf |
| recreuiting general mentors | |
| drafting PPM and legal documents | Cultive8 |
| investment conversion (IoT s/b/ KF II) | |
| venture partnership (IoT s/b KF II) | |
| investment committee and more | Nordics |
| Managing Director - KF II should pay unpaid salary, unpaid benefits, general unpaid expenses | |
| partnership interest IoT s/b/ KF II | |
| partnership interest Singapore IoT accelerator | |
| partnership interest Singapore FinTech accelerator | |
| Augmented Knowledge through 2018 | No claim if salary paid - part of the duties for my job - but if salary not paid shortly, will pursue claim |
| consigliere | DC |
| The SparkLabs Group ER (tution + cell phone; other Sparklabs Group unreimbursed expenses dealt with elsewhere) | |
| Content and investors | e.g. Jeff Clavier |
| Foundry GP share or equity | 1% |
| Nordics GP share | |
| Lyft SPV GP (assigned claim) | |
| Augmented Knowledge equity | worth at least $70 (as patents had $7 mil offer) |
| University June 2019 Speech in Seoul and trip there | |
| GAN / Other blackballing | unversity |
| SpeedScaling | AK, Bioinspira, Locus Labs |
| Conference participation and speaking | |
| Including Demo Day content most of the time (many high-profile interviews and panels including Nic Braithwaite) | |
| Deal flow | Korea Ventures, KF I, KF II, SGV, Cultiv8 |
| Investment Raise | MLB |
| Raising | SGV, KF I, KF II, Oman |
| Wrongful Termination | |
| Violations of NCND | |
| Office / place to live | |
| | |
| For the above, different sets of defendents including SL partners, erntities, officers | |
| For some of the above, the unprofessionals e.g. WS, Cooley, accountants, tax prep, auditors (Elevate, A LLP, E&Y) | |
| includes Christine and Bernard who served as "internal audit" andf falsified financials | |
| Separate Cooley claims (Josh Elefant) | |
| Now that Cooley has ratified forgery, perfury, falsifying court evidence, and securities fraud, further claims there | |

*EXHIBIT B*

February 11th, 2020

Jimmy Kim
Dr. Kevin S. Jo
c/o The SparkLabs Group
3587 Lupine Avenue
Palo Alto, CA 94303

Regarding: Augmented Knowledge

Dear Mr. Kim and Dr. Jo:

As you know, I was awarded 1% of the outstanding equity in the captioned corporation.

It is my understanding based on a conversation with Mr. Kim and Mr. Moon that a $7,000,000 US offer was made for the patents owned by Augmented Knowledge which would impute a minimum value of $70,000 to my shares. I wish to sell my shares. I am interested in assessing and obtaining a fair valuation.

The California Corporations Act, Section 1601, states, in pertinent part:

> **1601.** (a) The accounting books and records and minutes of proceedings of the shareholders and the board and committees of the board of any domestic corporation, **and of any foreign corporation keeping any such records in this state** or having its principal executive office in this state, shall be open to inspection upon the written demand on the corporation of any shareholder or holder of a voting trust certificate at any reasonable time during usual business hours, for a purpose reasonably related to such holder s interests as a shareholder or as the holder of such voting trust certificate. The right of inspection created by this subdivision shall extend to the records of each subsidiary of a corporation subject to this subdivision.
>
> (b) Such inspection by a shareholder or holder of a voting trust certificate may be made in person or by agent or attorney, and the right of inspection includes the right to copy and make extracts. **The right of the shareholders to inspect the corporate records may not be limited by the articles or bylaws.** (Emphasis added).

Given the relationship between the SparkLabs Group and Augmented Knowledge it is a virtual certainty that financial records relating to Augmented Knowledge are kept in California which would trigger my rights under 1601. Furthermore, as Augmented Knowledge does business in Santa Clara, CA, I have direct rights to inspect any and all such records. <u>Alternatively and conjunctively, Section 446 (2) of the Korean Commercial Act confers equivalent rights to inspect and copy financial and accounting records.</u>

1

I hereby demand my statutory and common-law rights to inspect the books and records of Augmented Knowledge. Such records shall necessarily include the US $7,000,000 offer for the patents of Augmented Knowledge, and any other documents or records that will help value my stake for sale.

My reasons for making the request include the following (non-exhaustively):

- To determine the fair market value of Augmented Knowledge;
- To determine the value of the intellectual property of Augmented Knowledge;
- To determine fair compensation for my tenure as interim CEO (original offer by Mr. Moon) and then Chief Marketing Officer of Augmented Knowledge by reviewing the compensation offered to peer C-level officers;
- To determine the budget allocated for the interim CEO or CEO position based partially on conversations with headhunters (where a range of US $20,000 to $40,000 per month was discussed depending on the amount of equity allocated, or possibly a lot more for a rain-making CEO that would bring investment and sales to the company).
- To ascertain whether Augmented Knowledge is being prudently managed;
- To ascertain whether The SparkLabs Group has dealt fairly and responsibly with Augmented Knowledge;
- To obtain any other data or evidence that would have a bearing on my *quantum merit* compensation for services rendered before and during my tenure as Chief Marketing Officer.

Obviously, I am demanding the right to inspect in anticipation of a fair and transparent negotiation of appropriate compensation for my services and value for my shares. I am prepared to sue to enforce my rights in which case the information will obviously be as readily obtainable in discovery. My preference is to avert litigation whenever an adversary or counterparty shows good faith.

Thus far the SparkLabs Group has shown extremely bad faith, with its partners being willing to commit various felonies including forgery, perjury, and securities fraud. However, until May 2019 my dealings with Augmented Knowledge were with an entity and people that seemed to be fair, equitable, and law-abiding… thus, I feel that it's worth my while to wait up to seven (7) days to see if Augmented Knowledge will follow laws and provide the required information by next week.

Please reply to this communication within seven days of the instant date and thank you for your consideration of my request.

[/s Carl A. Wescott]

Carl A. Wescott +1 415 335 5000

2

Person Filing: Carl A. Wescott

Address (If not protected): 7707 E. McDowell #248

City, State, Zip Code: Scottsdale AZ 85257

Telephone: 415 335 5000

Email Address: carlwescott2020@gmail.com

Lawyer's Bar Number: n/a

Representing ☒ Self, without a Lawyer  or  ☐ Attorney for  ☐ Plaintiff  OR  ☐ Defendant

CLERK OF THE SUPERIOR COURT
FILED
2020 APR 14 AM 10: 23
B. Barrett, Deputy

FOR CLERK'S USE ONLY

# SUPERIOR COURT OF ARIZONA
# IN MARICOPA COUNTY

Carl A. Wescott

_____
PLAINTIFF,

vs.

Dr KGS Jo, Augmented Knowledge, et al

_____
DEFENDANT.

CV 2020-004633

Case Number: _____

## CERTIFICATE OF COMPULSORY ARBITRATION

**\*Notice to Defendant: If you agree with the Plaintiff's Certificate of Compulsory Arbitration, you DO NOT need to file this form.**

The undersigned certifies that this case is (Please check **ONLY** one option below):

☐ **Subject to Arbitration** – The amount of money in controversy **DOES NOT** exceed $50,000, **AND** no other affirmative relief is sought.

☒ **Not Subject to Arbitration** – The amount of money in controversy **DOES** exceed $50,000, **OR** other affirmative relief is sought.

**\*Defendant – If you DISAGREE with the Plaintiff's Certificate of Compulsory Arbitration, please explain why you disagree below:**

_____
_____
_____

SUBMITTED this ___13th___ day of ___April___, 20_20_ .

SIGNATURE _____

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED                Page 1 of 1                    CV03f 120319

Person Filing: Carl A. Wescott

Address (if not protected): 7707 E. McDowell #248

City, State, Zip Code: Scottsdale AZ 85257

Telephone: 415 335 5000

Email Address: carlwescott2020@gmail.com

Lawyer's Bar Number: n/a

Representing ☒ Self, without a Lawyer  or  ☐ Attorney for  ☐ Plaintiff    OR ☐Defendant

CLERK OF THE SUPERIOR COURT
For ~~Clerk's~~ FILED Use Only

2020 APR 14  AM 10: 23

B. Barrett, Deputy

# SUPERIOR COURT OF ARIZONA
# IN MARICOPA COUNTY

CV 2020-004633

Carl A. Wescott
Name of Plaintiff

Dr KGS Jo, Augmented Knowledge, et al.
Name of Defendant

Case Number: _____

Title:  **PLAINTIFF'S DEMAND for JURY TRIAL**

Plaintiff, Carl A. Wescott_____, demands a trial by jury in this case. If this
(Name of Plaintiff)

case is sent to compulsory arbitration, Plaintiff demands a trial by jury if there is an appeal

from that compulsory arbitration.

Dated this ___4/13/2020___
(Date of signature)

_____
(Signature of Plaintiff or Plaintiff's Attorney)

Person Filing: Carl A. Wescott
Address (if not protected): 7707 E. McDowell #248
City, State, Zip Code: Scottsdale, AZ 85257
Telephone: 415 335 5000
Email Address: carlwescott2020@gmail.com
Lawyer's Bar Number: _____ n/a

CLERK OF THE SUPERIOR COURT
FILED
2020 APR 14  AM 10: 20

B. Barrett, Deputy

Representing  ☒ Self, without a Lawyer  or  ☐ Attorney for  ☐ Petitioner  OR  ☐ Respondent

# SUPERIOR COURT OF ARIZONA
# IN MARICOPA COUNTY

Carl A. Wescott
**Name of Petitioner/Plaintiff**

**Case Number:** CV 2020-004633

**ORDER REGARDING DEFERRAL OR WAIVER
OF COURT FEES AND COSTS AND
NOTICE REGARDING CONSENT JUDGMENT**

Dr. Kevin GS Jo, Augmented Knowledge, et al.
**Name of Respondent/Defendant**

---

**NOTE: ONLY FILL OUT THE ABOVE INFORMATION. THE COURT WILL FILL OUT THE REST OF THE FORM.**

---

**THE COURT FINDS** that the applicant (print name) Carl A. Wescott                    :

1.  ☐ IS NOT ELIGIBLE FOR A DEFERRAL of fees and/or costs.

    **OR**

2.  ☒ IS ELIGIBLE FOR A DEFERRAL of fees and/or costs based on financial eligibility.  As required by
    state      law, the applicant has signed a consent to entry of judgment.

    **OR**

3.  ☐ IS ELIGIBLE FOR A DEFERRAL of fees and/or costs at the court's discretion (A.R.S. § 12-302(L)).

    **OR**

4.  ☐ IS ELIGIBLE FOR A DEFERRAL of fees and/or costs based on good cause shown.  As required by
    state law, the applicant has signed a consent to entry of judgment.

    **OR**

5.  ☐ IS ELIGIBLE FOR A WAIVER of fees and/or costs because the applicant is permanently unable to
    pay (A.R.S. § 12-302(D)).

    **OR**

6.  ☐ IS ELIGIBLE FOR A WAIVER of fees and/or costs at the court's discretion (A.R.S. § 12-302(L)).

    **OR**

Case Number: _____

**7.** ☐ IS NOT ELIGIBLE FOR A WAIVER of fees and/or costs.

## IT IS ORDERED:

☐ **DEFERRAL IS DENIED** for the following reason(s):

☐ The application is incomplete because _____

**You are encouraged to submit a complete application.**

☐ The applicant does not meet the financial criteria for deferral because _____

_____

**A deferral MUST BE granted if the applicant is receiving public assistance benefits from the Temporary Assistance to Needy Families (TANF) program or Food Stamps; presents documentation they are currently receiving services from a non-profit legal services organization; has an income that is insufficient or barely sufficient to meet the daily essentials of life and that includes no allotment that could be budgeted to pay the fees and costs necessary to gain access to the court; or, if the applicant demonstrates other good cause.**

☑ **DEFERRAL IS GRANTED** for the following fees and/or costs in this court:

☑ Any or all filing fees; fees for the issuance of either a summons and subpoena; or the cost of attendance at an educational program required by A.R.S. § 25-352, fees for obtaining one certified copy of a temporary order in a domestic relations case or a final order, judgment or decree in all civil proceedings.

☐ Fees for service of process by a sheriff, marshal, constable or law enforcement agency.

☐ Fees for service by publication.

☐ Filing fees and photocopy fees for the preparation of the record on appeal.

☐ Court reporter or transcriber fees if employed by the court for the preparation of the transcript.

**IF A DEFERRAL IS GRANTED, PLEASE CHECK ONE OF THE FOLLOWING BOXES:**

☑ **NO PAYMENTS WILL BE DUE UNTIL FURTHER NOTICE.**

☐ **SCHEDULE OF PAYMENTS.**
The applicant shall pay $_____ each _____ (week, month etc.) until paid in full, beginning _____.

☐ **WAIVER IS DENIED** for all fees and/or costs in this case.

☐ **WAIVER IS GRANTED** for all fees and/or costs in this case that may be waived under A.R.S. § 12-302(H).

☐ Any or all filing fees; fees for the issuance of either a summons or subpoena; or the cost of attendance at an educational program required by A.R.S. § 25-352, fees for obtaining one certified copy of a temporary order in a domestic relations case or a final order, judgment or decree in all civil proceedings.

☐ Fees for service of process by a sheriff, marshal, constable or law enforcement agency.

☐ Fees for service by publication.

☐ Filing fees and photocopy fees for the preparation of the record on appeal.

☐ Court reporter or transcriber fees if employed by the court for the preparation of the transcript.

**RIGHT TO JUDICIAL REVIEW.** If the application is denied or a payment schedule is set by a special commissioner, you may request the decision be reviewed by a judicial officer. The request must be made within twenty (20) days of the day the order was mailed or delivered to you. If a schedule of payments has been established, payments shall be suspended until a decision is made after judicial review. Judicial review shall be held as soon as reasonably possible.

**NOTICE REGARDING CONSENT JUDGMENT.** Unless any of the following applies, a consent judgment may be entered against the applicant for all fees and costs that are deferred and remain unpaid thirty (30) days after entry of final judgment:

A. Fees and costs are taxed to another party;

B. The applicant has an established schedule of payments in effect and is current with those payments;

C. The applicant filed a supplemental application for waiver or further deferral of fees and costs and a decision by the court is pending;

D. In response to a supplemental application, the court orders that the fees and costs be waived or further deferred; or

E. Within twenty (20) days of the date the court denies the supplemental application, the applicant either:

    1. Pays the fees and costs; or,

    2. Requests a hearing on the court's order denying further deferral or waiver. If the applicant requests a hearing, the court cannot enter the consent judgment unless a hearing is held, further deferral or waiver is denied, and payment has not been made within the time prescribed by the court.

If an appeal is taken, a consent judgment for deferred fees and costs that remain unpaid in the lower court shall not be entered until thirty (30) days after the appeals process is concluded. The procedures for notice of court fees and costs and for entry of a consent judgment continue to apply. If a consent judgment is signed and the applicant pays the fees and costs in full, the court is required to comply with the provisions of A.R.S. § 33-964(C).

**DUTY TO REPORT CHANGE IN FINANCIAL CIRCUMSTANCES.** An applicant who is granted a deferral or waiver shall promptly notify the court of any change in financial circumstances during the pendency of the case that would affect the applicant's ability to pay court fees and costs. Any time the applicant appears before the court on this case, the court may inquire as to the applicant's financial circumstances.

DATED: ___APR 1 4 2020___    _____

                                 ☐ Judicial Officer   ☒ Special Commissioner

---

I CERTIFY that I mailed/delivered/provided a copy of this document to:

☐ Applicant ☐ at the above address ☒ in court

☐ Applicant's attorney ☐ at the above address ☐ in court

Date: ___APR 1 4 2020___    By: _____
                                               Clerk

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED
ODF

GNF18f - 050119
Use current version

**Party Updating Information is:**
☒ **Petitioner/Plaintiff**
☐ **Respondent/Defendant**



CLERK OF THE
SUPERIOR COURT
FILED
C. O'NEILL, DEP

**20** MAY 11 PM 1: 46

For Clerk's Use Only

# SUPERIOR COURT OF ARIZONA
# IN MARICOPA COUNTY

Carl A. Wescott
_____
**Name of Petitioner/Plaintiff ***

Augmented Knowledge, et. al
_____
**Name of Respondent/Defendant ***

**CASE NO.:** CV2020-004633

**ATLAS NO.:** _____

***(Write Names above as on Court Documents)**

**UPDATE INFORMATION on**
☒ **MAILING ADDRESS**
☒ **EMAIL ADDRESS and/or**
☐ **NAME**

### If your address is protected by Court Order, DO NOT use this form.

## I UNDERSTAND:

1.  This Notice is to tell the Clerk of Superior Court that my address or name has changed.

2.  This form does NOT legally change my name.

3.  Address and name changes that are not sealed or confidential will be entered on both the support payment and the court's automated system and will be available to the public as a public record.

4.  I may only submit changes for my own address and name.

## INFORMATION I WANT TO CHANGE: (PLEASE PRINT)

My old name was: _____

My new name is: My _____

old address was: 7707 E. McDowell Rd, #248, Scottsdale, AZ 85257
_____
(Street Address, City, State, Zip Code)

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED                    Page 1 of 2                    GN91f 112519

Case No. CV2020-004633

My new address is: 7017 E. McDowell Rd, #214, Scottsdale, AZ 85257
(Street Address, City, State, Zip Code)

My new mailing address is: _____
(If different from above)

My old contact phone number was: (_____)_____

My new contact phone number is: (_____)_____

My old email address was:    carlwescott42@gmail.com

My new email address is:    carlwescott2020@gmail.com

My date of birth is: _____

☐ There is an order for payments through the Clearinghouse for Child Support and/or Spousal Maintenance (if so, fax to 602-506-1937.) OR

☐ There is an order for payments through the Clerk of Superior Court for Restitution (if so, email the completed form to; CFOResponse@mail.maricopa.gov ) OR

☐ This update is for other than Support, Maintenance or Restitution (if so, fax to 602-506-6690).

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed on:    05/11/2020                    _____
            Date                           Signature of Person Requesting Change

☐ Please send me information on direct deposit for Child Support and/or Spousal Maintenance.

☐ iCIS Address updated    (FOR COURT USE ONLY)

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

GN91f-112519